No. 17,042.

CARLENO COAL SALES, INC. v. RAMSAY
COAL COMPANY.

(270 P. [2d] 755)

Decided May 17, 1954.

Mr. WILLIAM F. REYNARD, Mr. CARLE WHITEHEAD, Mr.
ALBERT L. VOGL, for plaintiff in error.

Mr. HARRY S. SILVERSTEIN, JR., Mr. ROBERT C. TALL-
MADGE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to the parties to this action
as they appeared in the trial court, where plaintiff in
error was plaintiff and defendant in error was defendant.

March 31, 1944, the parties entered into a written con-
tract, under the terms of which defendant appointed
plaintiff "exclusive distributor for all coal produced" at
the mines operated by it, except the right reserved to
sell to named railway companies. After approximately
three years, during which the parties operated under the
terms of said contract, defendant, in April, 1947, served
upon plaintiff a notice of termination of the contract,
which was as follows:

"Because of your continued, persistent and deliberate
failure and refusal to perform and execute the provi-
sions in our agreement entered into in March, 1944, on
your part to be performed, and because of your abandon-
ment of the contract and discontinuance thereof and
therewith, I am treating and regarding the contract as
rescinded, cancelled and no longer obligatory and of no
further force or effect.

"You are therefore, notified and advised that I do not
intend in the future to supply you with coal under or
pursuant to said contract, or at all, and am not and will
not in the future be bound by the contract, or any of its
provisions."

Paragraph 9 of the contract provides as follows:

"This agreement shall continue for 5 years from the
date hereof, and for a further period of 5 years, at the
option of Seller, if Seller gives Producer written notice
of intention to exercise such option at least 90 days prior
to the expiration of the first period.

"In the event of default or breach of the provisions hereof by either party, the party not at fault may give to the defaulting party 60 days written notice of claim of default and intention to cancel the contract, specifying the particular breach which it is claimed has been made and thereupon, unless such breach is corrected within such 60 days, the party serving such notice may, if such breach has actually existed, cancel and terminate the contract; this provision shall not deprive either party of the right to institute a proceeding for a declaratory judgment to determine the existence of an alleged breach hereof or to determine the construction hereof or of any part hereof."

After service of the above-mentioned notice, defendant refused to recognize the agency created by the 1944 contract.

The second amended complaint filed by plaintiff contained two counts, in the first of which it sought a declaratory judgment by which the court would decree that the contract was in full force and effect, and that the attempted notice of termination thereof was wholly ineffectual. By the second count it prayed for damages for the alleged failure on the part of defendant to supply coal to plaintiff under the terms of said contract. Plaintiff alleged that, notwithstanding its requirements for coal under the terms of said contract, defendant produced approximately 30,000 tons of coal and delivered same to other purchasers, in violation of the terms of the agreement.

The cause was tried to the court without a jury. By agreement of counsel it was stipulated that the sole question submitted to the court for determination was whether defendant had legally terminated the contract. In the event that this question was decided in favor of plaintiff the amount of damages, if any, which it might have been entitled to recover under the second count of its complaint was to be determined upon a subsequent trial.

Defendant made no showing that any sixty-day notice was given to plaintiff as provided in paragraph 9 of the contract. Evidence was offered by it concerning alleged failures on the part of plaintiff to perform the contract, and because of these failures it is argued in its behalf that the contract was lawfully terminated instanter by service of the instrument hereinabove quoted.

The trial court in its findings said, inter alia:

"It has been established at the trial of the issues in this case, by the great weight of the evidence, in the judgment of the court, that defendant Ramsay Coal Company was amply justified in cancelling the contract between it and the plaintiff in the manner in which it did so cancel the contract; and it has not been established by the plaintiff, by a preponderance of the evidence or otherwise, that plaintiff was entitled to any damages from the defendant for breach of contract without cause, or for any of the other reasons set forth in the second cause of action.

"The issues are found in favor of the defendant and against the plaintiff on plaintiff's complaint; and with this finding there is no necessity for any further hearings to determine the amount of damages, no damages having been established."

Judgment was accordingly entered in favor of defendant, and plaintiff, seeking reversal of that judgment, brings the case to this court for review by writ of error.

Question to be Determined.

*Where parties enter into an agency contract, for a specific period of time, with a reservation that it could be cancelled before the expiration of that period by a sixty-day notice which must specifically set forth the default claimed, and permit the party claimed against sixty days within which to cure the default; can the contract be terminated for alleged failure of performance without giving the sixty-day notice of intention to end the agreement?*

■ ■ The question is answered in the negative. It

is argued by counsel for defendant that the provision for a sixty-day notice is not mandatory in that it contains the clause, "* * * the party not at fault *may* give to the defaulting party 60 days written notice * * *." (Emphasis supplied). Whether the word "may," as used in this clause of the contract shall be construed as imposing a mandatory duty upon the parties must be determined from the whole agreement, and the manifest intention of the parties as expressed therein must govern. It is not always true that use of the word "may" imposes only a permissive right or procedure. It has been held that this word, when considered with the subject matter of a statute, means "must" or "shall." *Board of County Commissioners of Pueblo County v. Smith,* 22 Colo. 534, 45 Pac. 357; *People ex rel. v. Board of County Commissioners of Rio Grande County et al.,* 7 Colo. App. 229, 42 Pac. 1032. Generally, the rules applicable to the construction of constitutional provisions, statutes and contracts are the same. *Jones v. Board of Adjustment,* 119 Colo. 420, 204 P. (2d) 560. From paragraph 9 of the contract in the instant case it is clear that the parties intended to make exclusive provision for the termination of the agreement prior to the expiration date fixed by the instrument. To hold that use of the word "may" created no rights or duties, and that it amounted to no more than a permissive or optional procedure, would be to give no meaning whatever to an entire paragraph of the contract, and to interpret it as mere surplusage. Where, by reasonable construction of a clause in a contract, the words employed can be given effect, it is our duty to thus construe the words used. It is presumed that each part of the contract has a purpose, and a construction which gives legal effect to every part thereof, will be adopted. *Bedford, State Treasurer v. Colorado Fuel & Iron Corp.,* 102 Colo. 538, 81 P. (2d) 752. Certainly the parties intended to accomplish something by the considered language employed. The intention to cover the field of cancellation for default of either party

is clear, and this means that the sixty-day notice of intention to terminate is mandatory, notwithstanding the use of the word "may." By the use of that word in the contract before us, the employer was given the option to serve the sixty-day notice if it considered the default of sufficient consequence to terminate the contract. If it elected not to give such notice then the default was waived.

Counsel for defendant quote from volume 2 C.J.S., page 1157, as follows: "Accordingly, an agency created for a definite term may nevertheless be rightfully revoked before its scheduled date of expiration, without liability on the part of the principal, where the agent fails to perform faithfully his express or implied duties as agent; * * *." It is apparent that the above quotation, and others cited by counsel for defendant, deals generally with the unquestioned right of the principal to discharge the agent for cause where there is no express provision in the contract placing limitations and restrictions upon the exercise of that right, or specifying the manner in which the right may be exercised. In volume 2 American Jurisprudence, page 45, section 49, we find the following apt statement:

"The right to cancel an agency contract may depend upon some reservation or stipulation in the agency contract itself. Such a reservation may in effect give the right of cancellation at the will of either party or upon the happening of some contingency or the nonperformance of some expressed condition.
* * *

"If the right to cancel an agency contract is dependent upon some contingency, the cancellation must be justified by establishing the happening of the contingency upon which the right to cancel is based. * * *."

In brief, defendant had specifically restricted its right to cancel the contract for cause upon a sixty-day notice specifying the alleged contract breaches, of which complaint was made, with a right of plaintiff to correct the

alleged breaches within that sixty-day period. Defendant attempted to cancel the agency by a notice of immediate termination without specification of breaches which allegedly occurred. This was a violation of the contract, which would entitle plaintiff to at least nominal damages. By stipulation of the parties the question of damages was expressly reserved for trial upon a further hearing. The trial court erred in concluding that there was no liability on the part of defendant for damages in any sum.

The judgment is reversed and the cause remanded for further proceedings to determine the amount of damages, if any, sustained by plaintiff.

MR. JUSTICE BRADFIELD dissents.