## No. 27369

## The People of the State of Colorado v. James R. Hoehl

(568 P.2d 484)

Decided September 6, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, James S. Russell, Assistant, for plaintiff-appellee.

Kelly, Haglund & Garnsey, Norman D. Haglund, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant James R. Hoehl appeals his conviction for child abuse. We reverse and remand for a new trial.

Defendant was charged in a two-count information in Denver District Court with child abuse, section 18-6-401(1)(a), C.R.S. 1973, and first-degree assault, section 18-3-202, C.R.S. 1973. He was acquitted of the assault charge.

Regarding the child abuse charge, the information alleged that:
"[b]etween the dates of February 20, 1975 and February 25, 1975, JAMES R. HOEHL, did then and there unlawfully, feloniously, knowingly, intentionally and without justifiable excuse, cause and permit a child, JODY SIEMILLER, to be placed in a situation that could endanger the child's life and health, and did further torture and cruelly punish the aforesaid JODY SIEMILLER, the foregoing resulting in serious bodily injury * * *."
The district court denied defendant's motion to dismiss this count or for a bill of particulars.

At trial, the People introduced two voluntary statements by defendant concerning the incident in question. These statements, reaffirmed by defendant's later testimony, related that defendant was babysitting Jody Siemiller, the four-year-old daugher of a friend, on February 23, 1975, as he had done on prior occasions. After taking Jody to a late movie, defendant drove around town for two or two and one-half hours. The night was cold, a window was open, the heater in defendant's car was not working, and Jody wore only a light jacket.

As a result, when they arrived at defendant's house, Jody was tired and complained that her hands were cold. Defendant told her to place her hands on a steam radiator and assisted her in doing so. Defendant left the room. When he returned, Jody said her hands were still cold. Defendant suggested that she turn them over, placing them palms down on the radiator. He again left the room. On his return, Jody complained that her hands hurt. Defendant discovered large blisters on both palms. She did not cry until defendant peeled a portion of the skin from her right hand. He washed her hands in cold water, applied burn ointment, and put her to bed. The next morning he took her home.

The bulk of the People's evidence consisted of expert testimony by three doctors that Jody's injuries could not have occurred as defendant claimed. They testified that despite the cold and Jody's fatigue, she would have felt pain from such intense heat and removed her hands from the radiator. Jody's injuries were described as second and third-degree burns, one requiring a skin graft.

Defendant denied holding Jody's hands on the radiator. Two expert witnesses for the defense testified that the burns could have been self-inflicted, without Jody's feeling pain.

At the close of the evidence, the court, on the People's motion struck from the information the language "and did further torture and cruelly punish the aforesaid JODY SIEMILLER." The court refused to instruct the jury on the meaning of several phrases in the child abuse statute, remarking:

"Well, I find that there is no help in the statute so far as any definitions or guidelines * * *. We can reach definitions, but it being a new statute, there are no applicable guidelines or standards and accordingly, we will have to leave it up to the jury to see if they can arrive at their own opinion as to what constitutes a violation of this section."

The jury returned its verdict, finding defendant guilty of child abuse.

Defendant urges reversal of this conviction on two grounds: (1) the child abuse statute, section 18-6-401(1)(a), C.R.S. 1973, is impermissibly vague, and (2) the information was defective for vagueness. We consider these allegations in order.

## I.

Section 18-6-401(1)(a), C.R.S. 1973, provides:

"(1) A person commits child abuse if he knowingly, intentionally, or negligently, and *without justifiable excuse*, causes or permits a child to be:

"(a) Placed in a situation that *may endanger* the child's life or health* * *."

(Emphasis added.)

Defendant attacks the italicized language as unconstitutionally vague, in violation of *U.S. Const.* amend V and *Colo. Const.* Art. II, Sec. 25.

At the outset, we note that a statute claimed to be impermissibly vague must be closely scrutinized. *People v. Blue*, 190 Colo. 95, 544 P.2d 385; *People v. District Ct.*, 185 Colo. 78, 521 P.2d 1254. But, where a statute may be interpreted several ways, one of which is constitutional, the constitutional interpretation should be adopted. *People v. Gonzales*, 188 Colo. 272, 534 P.2d 626; *People v. District Ct., supra.* With these principles in mind, we consider the challenged statute.

Normally, "may" means "be in some degree likely," *Merriam-Webster's New International Dictionary* (Third Edition) p. 1396, "expressing ability, competency, liberty, permission, possibility, probability or contingency." *Black's Law Dictionary* 1131 (4th rev. ed. 1968). *See Greyhound Corp. v. Excess Insurance Co.*, 233 F.2d 630 (5th Cir. 1956); *Grant v. Utah State Land Board*, 26 Utah2d 100, 485 P.2d 1035. So construed, we seriously doubt whether "may" in a criminal statute provides a fair description of the prohibited conduct, since virtually any conduct directed toward a child has the possibility, however slim, of endangering the child's life or health. *People v. Gonzales, supra. See State v. Lucero*, 87 N.M. 242, 531 P.2d 1215 (N.M. Ct. App. 1975); *State v. Llopis*, 257 So.2d 17 (Fla. 1971).

We have not, however, hesitated to construe "may" as importing a greater degree of certainty, where necessary. *Duprey v. Anderson*, 184 Colo. 70, 518 P.2d 807 ("may" interpreted as "shall" in statute); *Carleno Sales v. Ramsay Co.*, 129 Colo. 393, 270 P.2d 755 (interpreted as "shall" in contract). Other courts have similarly found it necessary to depart from the everyday understanding of "may" in construing statutes, *International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714 (5th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (interpreted as "reasonable possibility"); *Federal Trade Commission v. Charles N. Miller Co.*, 97 F.2d 563 (1st Cir. 1938) (construed as "are designed to"), and contracts; *Greyhound Corp. v. Excess Insurance Co., supra*, (construed as "frequently and regularly").

We construe the word "may" in section 18-6-401(1)(a) to mean that there is a reasonable probability that the child's life or health will be endangered from the situation in which the child is placed. There is no constitutional impediment to the legislature punishing conduct creating less than imminent danger. *People v. Garcia*, 189 Colo. 347, 541 P.2d

687. This is a particularly appropriate standard where the protection of children is the statutory purpose.

The phrase "endanger the child's * * * health" contains no similar infirmities. In *People v. Garcia, supra,* we upheld section 18-4-105, C.R.S. 1973 (fourth-degree arson), which prohibits placing "any building or occupied structure * * * in danger of damage," noting that this standard "gives both the defendant and the jury a practical guideline to acceptable behavior." Similarly, "health" is a term readily comprehended and applied by jurors. *See People v. Vandiver,* 51 Ill.2d 525, 283 N.E.2d 681; *People v. Bergerson,* 17 N.Y.2d 398, 218 N.E.2d 288, 271 N.Y.S.2d 236.

■   The phrase "without justifiable excuse" presents greater problems. Similar provisions have been held impermissibly vague in other jurisdictions. *Vintage Imports, Ltd. v. Joseph E. Seagram & Sons, Inc.,* 409 F. Supp. 497 (E.D. Va. 1976) ("without just cause or provocation"); *Y.W.C.A. v. Kugler,* 342 F. Supp. 1048 (D.N.J. 1972), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 885 ("without lawful justification"). In view of our duty to interpret statutes constitutionally, however, we hold that the phrase "without justifiable excuse" in section 18-6-401 refers to the specific statute on justification, particularly section 18-1-703(1)(a), C.R.S. 1973, which concerns the use of physical force in the special relationship of one who is entrusted with the care of a minor.

■   The district court did not instruct the jury regarding the construction of section 18-6-401(1)(a) which we announce today. Nevertheless, defendant is entitled to instructions explaining the statutory language. *Hampton v. People,* 171 Colo. 101, 465 P.2d 112; *Gonzales v. People,* 166 Colo. 557, 445 P.2d 74. For this reason, we reverse defendant's conviction and remand for a new trial.

II.

■   Regarding defendant's contention that the information was impermissibly vague, it is well established that an information or indictment in the words of the statute is ordinarily sufficient. *People v. Moreno,* 176 Colo. 488, 491 P.2d 575. Where the record shows no prejudice to a defendant from an allegedly vague information, we will not reverse the trial court's decision to deny a motion for a bill of particulars. *Balltrip v. People,* 157 Colo. 108, 401 P.2d 259. The information here sufficiently apprised defendant of the charges against him, and the record fails to show that he was prejudiced by the district court's denial of his motion for a bill of particulars.

The judgment of the district court is reversed and the cause remanded for a new trial.