**No. C-1767**

**The People of the State of Colorado v. Frank Everly Maestas**

(606 P.2d 849)

Decided February 4, 1980.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Special Assistant, Sharon S. Metcalf, Assistant, for petitioner.

Gerash & Springer, P.C., Walter L. Gerash, Jeffrey A. Springer, for respondent.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

Respondent, Frank Everly Maestas, was found guilty of first-degree perjury, section 18-8-502, C.R.S. 1973. The indictment charged him with having given materially false testimony before a grand jury. The court of appeals reversed the conviction, holding that Maestas' statements to the grand jury were not material to the outcome of the grand jury proceedings. We reverse the court of appeals.

Maestas was called to testify before the grand jury of El Paso County, which was investigating a heroin distribution ring in Colorado Springs. The investigation was conducted by the Attorney General's

Organized Crime Strike Force, and it focused on certain known members of the drug ring, including one George Apodaca. The grand jury was presented with information that surveillance of known members of the drug ring was conducted by the Strike Force for the purpose of not only providing evidence of their involvement, but also to learn the identity of other participants in the drug ring.

The grand jury was also informed that members of the Strike Force had seen respondent Maestas with Apodaca in Apodaca's automobile. When questioned under oath before the grand jury about this meeting, Maestas denied any connection with Apodaca, as follows:

"Q. How about George Apodaca?
"A. Don't know him.
"Q. Have you ever been in a motor vehicle with George Apodaca?
"A. No, I haven't.
"Q. Is it no or are you not sure?
"A. No, it is a fact I never have.
"Q. And you know no man by the name of George Apodaca?
"A. I don't know anybody by that name."

Based on that testimony, Maestas was indicted for first-degree perjury. The trial court determined at an *in limine* hearing that, as a matter of law, the testimony was material to the grand jury investigation.

I.

■ The People contend that the court of appeals erred in concluding that Maestas' testimony was not materially false. In order for a statement to be materially false for purposes of the first-degree perjury statute, section 18-8-502, C.R.S. 1973, it must be one "which could have affected the course or outcome of an official proceeding . . . ." Section 18-8-501(1), C.R.S. 1973.[1] The court of appeals concluded that the People had failed to demonstrate how Maestas' testimony could have affected the outcome of the grand jury proceedings, particularly in light of the fact that Apodaca was in fact indicted by the grand jury for conspiracy.

■ The rule generally applied by the courts to determine materiality is whether the false declaration "has a tendency to influence, impede or hamper the grand jury from pursuing its investigation." *United States v. Percell,* 526 F.2d 189 (9th Cir. 1975). Testimony that is material to the grand jury investigation "need not be material to the main issue and it need not be directed to the primary subject of the investigation." *United*

---

[1] Section 18-8-501(1), C.R.S. 1973, now codified in 1978 Repl. Vol. 8, defines materially false statement as follows:

"'Materially false statement' means any false statement, regardless of its admissibility under the rules of evidence, which could have affected the course or outcome of an official proceeding, or the action or decision of a public servant, or the performance of a governmental function. Whether a falsification is material in a given factual situation is a question of law."

*States v. Percell, supra. Accord, Wheeler v. The People,* 63 Colo. 209, 165 P. 257 (1917).

The purpose of the grand jury is "to investigate possible offenses and to act as an independent barrier which protects the innocent from oppressive prosecution." *Losavio, Jr. v. Kikel,* 187 Colo. 148, 529 P.2d 306 (1974). Here, the purpose of the grand jury was to investigate a heroin ring, not merely to investigate one known member of the ring, *i.e.,* George Apodaca. The record at trial supported the People's position that the grand jury was also interested in identifying other members of the drug ring. Maestas' denial of his meeting with Apodaca tended to impede and hamper the grand jury from pursuing its investigation of the drug ring.

We agree with the rationale for the rule stated in *United States v. Stone,* 429 F.2d 138 (2nd Cir. 1970):

". . . materiality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be made against someone rather than prove matters directly at issue . . . . *Leads to further inquiry may be of material worth to an investigation."* (Emphasis added.)

*See also United States v. Alu,* 246 F.2d 29 (2nd Cir. 1957).

Maestas argues that since the grand jury did in fact indict Apodaca, and failed to indict him, his testimony was not material to the grand jury investigation. We do not agree. The test is whether Maestas' testimony, at the time his answers were given, *could have* affected the course or outcome of the investigation. *See United States v. Stone, supra.* Where the subject of the grand jury's investigation was the heroin distribution ring operating in the Colorado Springs area, all leads were material which might have assisted the grand jury in identifying those who had at any time been members of the heroin ring. *See United States v. Zborowski,* 271 F.2d 661 (2nd Cir. 1959).

Maestas asserts that the indictment did not advise him of the respect in which his statement was material to the grand jury investigation. The record reflects that Maestas had access to information, including the grand jury transcripts, which gave him notice of the focus of the grand jury's investigation. Thus, his claim of lack of specificity in the indictment has no basis in fact upon which he can reasonably assert that he was prejudiced. Cf. *People v. Hoehl,* 193 Colo. 557, 568 P.2d 484 (1977) (information sufficiently apprised defendant of charges); *People v. McNulty,* 184 Colo. 274, 519 P.2d 1195 (1974) (indictment sufficient to advise defendant of charges; he was also furnished with a bill of particulars and a transcript of the grand jury's testimony upon which the charges were predicated).

## II.

Because of the disposition by the court of appeals of this case on the first issue, it did not reach the second issue of whether the perjury indictment was defective. We have reviewed the indictment form and conclude that it complies with the statute, section 16-5-201, C.R.S. 1973 (1978 Repl. Vol. 8), which requires that the indictment state "the offense in the terms and language of the statute defining it, or so plainly that the nature of the offense may be easily understood by the jury." In our view, the indictment was sufficient to advise Maestas of the charges against him so that he could adequately prepare a defense. *People v. Mazza,* 182 Colo. 166, 511 P.2d 885 (1973).

The statute under which Maestas was charged, section 18-8-502(1), C.R.S. 1973, provides:

"A person commits perjury in the first degree if in any official proceeding he makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law."

Not only did the indictment track the language of the statute, it included a verbatim partial transcript of Maestas' testimony, under oath, before the grand jury (previously quoted in this opinion), which was asserted to be materially false, together with the additional averment that Maestas did not believe the testimony to be true.

Unlike the insufficiency of the allegations in the indictment discussed in *People v. Broncucia,* 189 Colo. 334, 540 P.2d 1101 (1975), *cert. denied* 431 U.S. 937, 97 S.Ct. 2647, 53 L.Ed.2d 254 (1977), the materially false statement alleged in the indictment in this case shows that Maestas' responses to the questions asked of him before the grand jury were direct and unequivocal. It was therefore not necessary to aver the true facts to demonstrate the falsity of the statement given under oath. As stated in *People v. Mazza, supra,* the indictment quoted the verbatim testimony and "by necessary implication, indicated that the converse of [Maestas'] testimony was the truth."

Accordingly, we reverse the judgment of the court of appeals.