STATE of Maine

v.

Larry JORDAN.

Supreme Judicial Court of Maine.

Argued May 9, 1990.

Decided May 22, 1990.

R. Christopher Almy, Dist. Atty., Philip C. Worden (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Brett D. Baber (orally), Rudman & Winchell, Bangor, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

Defendant Larry Jordan appeals his conviction of operating under the influence or with an excessive blood alcohol level, 29 M.R.S.A. § 1312 (1978 & Supp.1989) following a jury trial in Superior Court (Penobscot County, *Beaulieu,* J.). On appeal, defendant challenges the admissibility of the Intoxilyzer result, the sufficiency of the evidence and the constitutionality of the court's instructions to the jury.

On the evening of January 15, 1989, defendant was stopped on Harlow Street in Bangor because his car lacked an adequate exhaust system. Defendant testified that his car had a hole in the driver's side floor and the exhaust system had broken off near the engine. The officer making the stop detected an odor of alcohol on defendant's breath. After performing four field sobriety tests, defendant was arrested, taken to the Bangor Police station and given an Intoxilyzer test. The result of the test was .18.

Prior to trial, defendant filed a motion *in limine* objecting to the admissibility of the Intoxilyzer test result. He argued that the State should not be allowed to introduce the test result until it establishes that the Intoxilyzer is reliable when hydrocarbons are present. The trial justice denied defendant's motion, ruling that the results would be admissible if the State lays the appropriate foundation, namely, that the machine

complied with the requirements of section 1312(6) and that the law enforcement officer administering the test followed the regulations promulgated by the Department of Human Services (DHS).

At trial, defendant put on evidence attacking the reliability of the Intoxilyzer test result. Defendant's expert testified that automobile exhaust and gasoline contain hydrocarbons which, when present in a person's breath, will cause the Intoxilyzer to overreport the presence of alcohol. Defendant's expert further testified that if, as defendant testified, defendant had driven for 45 minutes shortly before his arrest, his Intoxilyzer result would be affected by hydrocarbons. The State introduced no contrary expert testimony.

Defendant was convicted of operating under the influence or with an excessive blood alcohol concentration.[1] He now appeals.

## I.

■ Defendant argues that the trial justice's interpretation of section 1312 as providing *per se* admissibility of an Intoxilyzer test result once the statutory criteria are satisfied was erroneous. In support of his argument, defendant cites the following:

Failure to comply with any provisions of this subsection or with any regulations promulgated in this subsection shall not, by itself, result in the exclusion of evidence of blood-alcohol level, *unless the evidence is determined to be not sufficiently reliable.*

29 M.R.S.A. § 1312(6) (Supp.1989) (emphasis added). According to defendant, this language requires the State to refute his evidence of unreliability in order to introduce the test result.

Defendant's argument is without merit. Section 1312(8) provides that "[t]he percentage by weight of alcohol in the defendant's blood ... as shown by ... results of

a self-contained breath-alcohol testing apparatus authorized by subsection 6, *shall be admissible in evidence." Id.* Section 1312(8) (Supp.1989) (emphasis added). Moreover, we have held that

[t]he prerequisites set forth in section 1312(6) serve as a *foundational* indicia of reliability. The statute declares that any test taken in compliance with those requirements is prima facie evidence of blood-alcohol level in any court. Evidence addressing the accuracy and reliability of the result of a properly administered test creates an issue of fact to be considered by the jury in weighing the evidence.

*State v. Pickering,* 462 A.2d 1151, 1156 (Me.1983) (emphasis in original).

The State's proof adequately established that the provisions of section 1312(6) and all applicable DHS regulations were satisfied. Defendant produced no evidence showing the contrary.

## II.

At the end of the State's case and at the end of the evidence, defendant moved for a judgment of acquittal. Both motions were denied. On appeal, defendant argues that the evidence was not sufficient to support the verdict. The standard for determining whether there was sufficient evidence to support a conviction "is whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry,* 495 A.2d 825, 826 (Me.1985); *see also State v. Vahlsing,* 557 A.2d 946, 947 (Me.1989).

■ There was ample evidence to support the verdict. The State introduced an Intoxilyzer test result that showed defendant had an excessive blood alcohol level. Although defendant introduced an expert opinion that, *if believed,* could have raised

---

1. § 1312–B reads in relevant part as follows:

    1. *Offense.* A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:

    A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or
    B. While having 0.08% or more by weight of alcohol in his blood.
29 M.R.S.A. § 1312–B (Supp.1989).

a reasonable doubt respecting defendant's blood alcohol level, the jury was not required to accept that opinion. *LaDew v. Com'r of Mental Health*, 532 A.2d 1051, 1054 (Me.1987). Moreover, even in the absence of an Intoxilyzer result, there was sufficient evidence to permit a finding that defendant was under the influence of intoxicating liquor.

### III.

Defendant requested the following instruction on reliability:

> The State has the burden to prove that the self-contained, breath alcohol testing machine, also known as the Intoxilyzer test, was reliable.

Declining to give the requested instruction, the trial justice explained that

> it's not an element of the crime that the State prove that the machine was reliable. Obviously that's a question for the jury to determine, whether or not the results of the test that have been testified to are sufficient for them to draw whatever inferences they want to draw.... That's a question of fact for the jury, and the Court will not give that instruction because it's misleading.

Defendant later requested a second instruction on reliability, which reads as follows:

> In determining whether the State has proven that Mr. Jordan operated with an excessive blood alcohol level, one of the two methods to prove a violation of 29 M.R.S.A. § 1312, you may consider evidence of the reliability of the self-contained, breath alcohol testing machine, also known as the intoxilyzer.

The trial justice declined to give the instruction, explaining that it amounted to a comment on the evidence.

■ Defendant timely objected to the denial of his first reliability instruction; therefore, we review for preserved error. *See* M.R.Crim.P. 30(b). Defendant argues that the trial justice's refusal to instruct the jury that the State must prove the Intoxilyzer's reliability beyond a reasonable doubt, along with the admission of the test result, shifted to him the burden of proof in violation of the due process clause of the fourteenth amendment to the United States Constitution. In support of his argument, defendant cites *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and its progeny, contending that any ruling that creates a mandatory presumption relieving the State of its burden of proof is a violation of due process.

In particular, defendant focuses on *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). In that case, the defendant, appealing his murder conviction, argued that jury instructions stating that (1) " '[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted' " and (2) " '[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted,' " effectively shifted to him the burden of proof on the issue of intent. *Id.* at 309, 105 S.Ct. at 1968. The Court's analysis considered whether the instructions had the effect of creating a mandatory presumption, whereby the jury *"must* infer the presumed fact if the State proves certain predicate facts," or merely a permissive inference that *"suggests* to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Id.* at 314, 105 S.Ct. at 1971. (emphasis added). Finding that a reasonable juror could have understood the challenged instructions as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the issue of intent, the Court held that the defendant's right to due process had been violated. *Id.* at 325, 105 S.Ct. at 1977.

Defendant's argument is unpersuasive. The trial justice's blood alcohol instructions read as follows:

> The elements that the State must prove first are, first, that the defendant operated a motor vehicle. If you find that the defendant operated a motor vehicle, then the State meets its burden by proving one or two of the following: at the time of that operation he had a blood alcohol content of .08 percent or more, or

was under the influence of intoxicating liquor.

. . . .

If you as a fact finder find, based on the evidence that has been introduced, that there was at the time alleged 0.05 percent or less by weight of alcohol in the defendant's blood it is evidence that the defendant was not under the influence of intoxicating liquor. If there was at the time alleged in excess of 0.05 percent but less than 0.08 percent by weight of alcohol in the defendant's blood, that's relevant evidence but it's not to be given—you may not infer from that fact alone that the defendant was under the influence, but you may consider that fact with other competent evidence in determining whether or not the defendant was under the influence of an intoxicating liquor.

There is no likelihood that a reasonable juror would, on the basis of these instructions, feel *compelled* to conclude that defendant's blood alcohol level was .08 or more.

■ With respect to the second reliability instruction, defendant failed to object before the jury retired; therefore, we will review only for obvious error affecting substantial rights. *See* M.R.Crim.P 30(b) & 52(b). While this instruction is arguably a correct statement of the law, we hold that the trial justice committed no error in declining to give it in the circumstances of this case. The above-quoted instructions show that in the context of the charge as a whole such an instruction could result in unduly emphasizing one party's evidence.

The entry is:

Judgment affirmed.

All concurring.