**STATE of Maine**

v.

**Shawn CROSSETTI.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 14, 1993.

Decided July 13, 1993.

---

David W. Crook, Dist. Atty., James G. Mitchell, Jr., Asst. Dist. Atty., Augusta, for plaintiff.

Jeffrey P. Towne, Waterville, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Shawn Crossetti appeals from the judgments entered in the Superior Court (Kennebec County, *Chandler, J.*) affirming the judgments entered in the District Court (Waterville, *French, J.*), convicting her of unlawful sexual contact, 17–A M.R.S.A. § 255 (1983 & Supp.1992); sexual abuse of a minor, *id.* § 254; and endangering the welfare of a child, *see id.* § 554. Crossetti contends that the endangering the welfare of a child statute is unconstitutionally vague as applied to the facts of this case, and also challenges the sufficiency of the evidence supporting the convictions. We affirm the judgments.

### Factual Background

During July and August of 1991, Crossetti's fourteen-year-old niece, Jane Doe [1],

---

1. A fictitious name is used to protect the victim.

lived with Crossetti, with the permission of Jane's parents, for the purpose of babysitting Crossetti's young children. On one afternoon, Crossetti, then age twenty-five, provided Jane with alcoholic beverages and prescription medication. Later that evening, Crossetti and another female relative locked Jane in a bedroom, performed oral sex on Jane, and touched Jane's vagina with their hands. On another occasion, Crossetti discussed sexual techniques and birth control with Jane, including the benefits of "one-night stands", played a pornographic video in front of Jane, and told Jane that she (Jane) was ready to have sexual intercourse with a boy.

With the encouragement of Crossetti, Jane then phoned her former boyfriend, and arranged to meet him at her uncle's house in Waterville. Crossetti drove Jane to the meeting place, and told Jane to wear the lingerie that Crossetti had previously purchased for her. After arriving at the Waterville home, Crossetti then sent Jane and her boyfriend into a bedroom, where another relative, in Crossetti's presence, supplied the couple with a condom. Crossetti then told the couple to "hurry up," "come on," and "there's a towel right on the bed." Jane and her boyfriend then engaged in sexual intercourse. When Jane's parents discovered the incident, they filed a complaint with the police.

Crossetti admitted at trial that she spoke with Jane about birth control and that she drove Jane to meet her boyfriend, but denied encouraging Jane to engage in sexual intercourse. Crossetti also admitted that she purchased the lingerie for Jane, and that she sent the teenage couple into the bedroom, but testified that she did not expect anything sexual to occur.

The District Court found Crossetti guilty of unlawful sexual contact, sexual abuse of a minor, and endangering the welfare of a child. The Superior Court affirmed, and this appeal followed.

### I.

Crossetti first contends that the statute proscribing endangering the wel-

fare of a child is unconstitutionally vague as applied to this case. We disagree. In examining a vagueness challenge to a criminal statute, "[t]he underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Palmer v. Euclid*, 402 U.S. 544, 546, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98 (1971) (citations omitted). The due process clauses of both the federal and Maine constitutions, *see* U.S. Const. amend. XIV; Me. Const. art. I, § 6–A, require a statute to "provide [a] reasonable and intelligible standard to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying these laws." *Maine Real Estate Commission v. Kelly*, 360 A.2d 528, 531 (Me.1976) (quoting *Shapiro Brothers Shoe Co. v. Lewiston–Auburn Shoeworkers Protective Assoc.*, 320 A.2d 247, 253 (Me. 1973)). "A statute which fails to meet this test, i.e., that 'sets guidelines which would force men of general intelligence to guess at its meaning, leaving them without assurance that their behavior complies with legal requirements and forcing courts to be uncertain in their interpretation of the law,' is characterized as 'void for vagueness.'" *Id.*

The statute in effect at the time of Crossetti's conduct provided, in pertinent part, that

> [a] person is guilty of endangering the welfare of a child if ... he otherwise knowingly endangers the child's health, safety or mental welfare by violating a duty of care or protection.

17–A M.R.S.A. § 554(1) (1983).[2] In *State v. Bachelder*, 565 A.2d 96, 97 (Me.1989), we rejected a similar vagueness challenge to this very statute. In the facts of that case, a mother was convicted of endangering the welfare of her six children by failing to provide adequate supervision, food, clothing, and shelter. In rejecting the mother's

contention that the statute was unconstitutionally vague because it does not define the duty of care or protection and does not specify what persons have the duty, we reasoned that the statute's "language furnishes a sufficient standard to withstand constitutional attack, *see, e.g., People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977), because a reasonable person of ordinary intelligence can understand what conduct is prohibited." *Id.* (quoting *City of Portland v. Jacobsky*, 496 A.2d 646, 649 (Me.1985)). We see no reason to reach a different result in the present case.

■ First, because Jane was living temporarily with Crossetti during the summer of 1991, Crossetti owed her a duty of care and protection. Second, we conclude that a reasonable person of ordinary intelligence would understand that Crossetti's conduct falls within the prohibition of the statute. Crossetti did more than merely facilitate an already willing and sexually mature fourteen-year-old girl. She actively fostered, condoned, and encouraged the sexual act to take place by providing both the guidance and the means for its occurrence. As a result, Crossetti exposed Jane to the possibilities of disease, pregnancy, and emotional and physical trauma. Thus, we find no constitutional invalidity in the statute as applied to these facts. Moreover, contrary to Crossetti's contention, the evidence presented at trial, when viewed in the light most favorable to the State, is sufficient to support the conviction. *State v. Jordan*, 575 A.2d 309, 310 (Me.1990).

## II.

■ Crossetti also challenges the sufficiency of the evidence supporting the convictions for unlawful sexual contact and sexual abuse of a minor. Contrary to Crossetti's contention, however, even if the State's case rested entirely on Jane's testimony, "it is well established that the testimony of the victim alone can support a

**2.** The statute was amended in 1991 to "reduce[ ] the culpable mental state for putting the child's health, safety or welfare in danger from 'knowingly' to 'recklessly.'" Comm.Amend. A to L.D. 1498, No. H–925, Statement of Fact (115th Legis.1991). *See* P.L.1991, ch. 672, § 1 (effective June 30, 1992); *see generally* 17–A M.R.S.A. § 554(1)(C) (Supp.1992). Since Crossetti's conduct occurred prior to the amendment's effective date, she was appropriately charged under the former version of the statute.

conviction...." *State v. Allen,* 462 A.2d 49, 53 (Me.1983) (quoting *State v. Pierce,* 438 A.2d 247, 252 (Me.1981)). Jane's testimony clearly related the essential facts necessary to make out the charges of unlawful sexual contact and sexual abuse of a minor, and her testimony "was neither internally inconsistent nor inherently incredible." *Id.*

The entry is:

Judgments affirmed.

All concurring.